UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| C.H. Robinson Worldwide, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Maxxum Group, LLC, et al., <br><br> Defendant. | Case No. 10-cv-1143 DSD/FLN <br><br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

The primary thrust of Defendants' argument is that since Tetrapoly, LLC ("Tetrapoly") is a separate entity from Maxxum Group, LLC ("Maxxum"), Tetrapoly and its principals need not respond to the instant lawsuit in Minnesota. Stated another way, Defendants argue that it is insulated from having to respond to this Court because they plopped down a $125 filing fee to the Ohio Secretary of State and incorporated Tetrapoly in late 2009 --- the day before it closed Maxxum's operations. Defendants' attempt to distance themselves from being held accountable to the victims of their fraudulent scheme must fail. Defendants purposefully and intentionally engaged in dozens of fraudulent transactions with a Minnesota company, including transactions that were performed within the State of Minnesota. For the reasons stated below and for good cause shown, Defendant's motion should be denied in all respects.

## FACTS

Maxxum is a commodity plastics trading firm located at 15422 Detroit Avenue, Lakewood, Ohio ("Detroit Avenue Location"). It was a leading domestic and export trader

of plastic materials and boasted of moving millions of pounds of material daily. Maxxum further claimed that it holds contracts that allow it to access scrap material from the largest plastic manufacturers in the United States and maintained 47 processing and distribution centers in the United States. *See Affidavit of Timothy W. Fafinski ("Fafinski Affidavit"), Paragraph 3, Exhibit A.* The owners of Maxxum are Alex and Debra Kowalski, Peter Kowalski and David Griffiths. Defendant Brian Donahue, who lives with Alex Kowalski's sister-in-law, was vice president and Defendant Andrew Kowalski, the brother of Alex Kowalski, was also a member of the senior management team as the Material Acquisition Specialist. *See Affidavit of James Macy ("Macy Affidavit"), Paragraph 3.*

An affiliate of Maxxum is M-Pad, LLC ("M-Pad"). M-Pad operates a densifier used in Maxxum's operations and is located at 4740 Manufacturing Avenue, Lakewood, Ohio ("Manufacturing Avenue Location"). *Macy Affidavit, Paragraph 4.* The owner of the Manufacturing Avenue Location is 4740, Ltd. with a mailing address of the Detroit Avenue Location. One of the listed principals of 4740, Ltd. is David Griffiths, part owner of Maxxum. *Fafinski Affidavit, Paragraph 4, Exhibit B.* The owner of Detroit Avenue Location is 15422, Ltd. which again, lists David Griffiths as one of its principals. *Fafinski Affidavit, Paragraph 5, Exhibit C.*

Plaintiff C.H. Robinson Worldwide, Inc. ("CHRW") is a Minnesota company who employs thousands of employees with its headquarters and principal place of business located in Eden Prairie, MN. CHRW provides logistics services brokering the transportation of goods throughout the nation. *Complaint, Paragraph 1.*

2

CHRW has provided over the road truck transportation services on behalf of Maxxum for the past five years throughout the nation. It has conducted more than 4,800 transactions with Maxxum totaling a value of $4,400,000 million dollars. *See Affidavit of William Glad ("Glad Affidavit"), Paragraph 3, Exhibit A.* From 2007 to 2009, Maxxum contracted with CHRW to transport at least 219 separate shipments originating or coming from Minnesota. *Macy Affidavit, Paragraph 5, Exhibit A.* During the last nine months of their relationship, CHRW transported more than 52 separate shipments from Minnesota at Maxxum's request ---- many of which remain unpaid and outstanding. *Macy Affidavit, Paragraph 6, Exhibit B.* For each transaction, an invoice is generated from CHRW where Maxxum is directed to pay CHRW in Minnesota. During the past five years, Maxxum has sent more than 400 separate payments into Minnesota totaling nearly 4 million dollars. *Glad Affidavit, Paragraph 4, Exhibit B.*

In late February of 2009, Maxxum approached CHRW requesting that it be its sole transportation provider for shipments in North America. Donahue, as Maxxum's Vice President of Finance provided consolidated financial statements. Based on the financial statements and Donahue's representations, CHRW extended $500,000 in credit to Maxxum. *Macy Affidavit, Paragraph 7.* Over the next several months, Maxxum "ramped up" and ordered several hundred thousands of dollars worth of transportation services. During this time frame, Maxxum forged a business relationship with Ketter Resin Group in Indiana where many shipments were delivered. *Macy Affidavit, Paragraph 8.*

On September 2, 2009, Donahue, Alex and Andrew Kowalski, Tim Carter and Shawn Stine met. Alex Kowalski informed them that their employment would be

terminated on Friday, September 4, 2009. He then presented them with an "opportunity" to get involved with a new company called Tetrapoly. The proposal was that those present would be partners and Kowalski would rent the building and M-Pad's densifier at the Manufacturing Avenue Location to Tetrapoly. The discussions also involved the profit split amongst them. The plan further included moving the Ketter Resin Group business to Tetrapoly. *Macy Affidavit, Paragraph 9*. The Ohio Secretary of States' records reveal that Tetrapoly was organized the very next day on September 3, 2009. *Fafinski Affidavit, Paragraph 6, Exhibit D*.

On September 4, 2009, the phones at Maxxum went unanswered. Later in the afternoon, CHRW reached Donahue on his cell phone and was informed that he no longer worked at Maxxum but rather, was a partner in a new business called Tetrapoly located at the Manufacturing Avenue Location. Shortly thereafter, CHRW met with Donahue at the Manufacturing Avenue Location and confirmed with Donahue that Tetrapoly was using M-Pad's densifier located on-site. Donahue also advised that Tetrapoly purchased product from Maxxum and then re-sold it to Ketter Resin Group. CHRW is currently shipping product for Ketter Resin Group into the Manufacturing Avenue Location. *Macy Affidavit, Paragraph 10*. There are more than 600 unpaid invoices totaling more than $435,000 owed by Defendants to CHRW. *Glad Affidavit, Paragraph 5, Exhibit C*.

**ARGUMENT**

I. <u>**Tetrapoly Has Sufficient Contacts to Assert Jurisdiction in Minnesota**</u>.

This Court applies Minnesota state law in determining whether personal jurisdiction exists. *See Johnson v. Welsh Equip., Inc.*, 518 F. Supp. 2d 1080, 1089 (D. Minn. 2007).

4

Minnesota Statutes Section 543.19 enumerates the circumstances permitting a Minnesota court to assert jurisdiction over a foreign entity, including when the defendant "transacts any business within the state" or "commits any act outside Minnesota causing injury or property damage in Minnesota." This statute authorizes the state to reach as far as the federal Constitution allows in exercise of personal jurisdiction; "if the personal jurisdiction requirements of the federal constitution are me, the requirements of the long arm statute will necessarily be met also. *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670,673 (Minn. App. 2000).

Federal caselaw provides that, for a state to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "minimum contacts" within the forum state so that exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66.S. Ct. 154, 158 (1945). To have the required minimum contacts, the defendant must have purposefully availed himself of the privilege of conducting activities within the jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958).

Minnesota federal and state courts use a five-factor test to determine whether jurisdiction comports with due process, considering: 1) the quantity of contacts with the forum state; 2) the nature and quality of the contacts; 3) the source and connection of the cause of action with these contacts; 4) the interest of the state in providing a forum; and 5) the convenience of the parties. *Minn. Pub. Radio v. Va. Beach Educ. Broad. Found., Inc.*, 519 F. Supp. 2d 970, 974 (D. Minn. 2007).

At the pre-trail stage, "the factual allegations in the complaint and supporting affidavits are to be taken as true" for purposes of determining jurisdiction. *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 NW2d 290, 292 (Minn. 1978). Plaintiff's allegations and evidence supporting jurisdiction must be taken as true. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976); *TRWL Fin. Establishment v. Select Int'l* 527 N.W.2d 573,575 (Minn. App. 1995). In doubtful cases, the court should resolve the jurisdictional question in favor of retention of jurisdiction. *Hardrives, Inc.*, 307 Minn. at 296, 240 N.W.2d at 818.

The Minnesota Supreme Court has held that the general rule is that the successor company is not liable for the debt and liabilities of the transferor. *JF Anderson Lumber Co., v. Myers*, 206 N.W.2d 365 (Minn. 1973). The *Anderson* court recognized, however, that the general rule does not apply where the successor is merely a continuation of the selling corporation or the transaction is entered into fraudulently in order to escape liability for such debts. *Id.*

Here, the factual allegations in the complaint and the supporting affidavits --- taken as true --- clearly supports a prima facie case that Tetrapoly was involved in a fraudulent transfer and was the successor of Maxxum. The September 2nd meeting and the arrangements that followed --- *i.e.*, purchase of assets without fair consideration, continuation of business with the same customers at an affiliate's location, same employees, common ownership, etc. certainly supports the claim that Tetrapoly was a mere continuation of Maxxum. In addition, the allegations in the complaint and the supporting affidavits relating to the September 2nd meeting involving Donahue, Kowalski and others in

connection with the transfer of Maxxum's assets to Tetrapoly also supports CHRW's claim that this transfer was made with the actual intent to hinder, delay or defraud creditors.

Accordingly, when the factual allegations and supporting affidavits are taken as true for purposes of determining jurisdiction, it must be concluded that Tetrapoly was the successor of Maxxum. As such, the contacts of Maxxum with CHRW and Minnesota are to be imputed onto Tetrapoly, as its successor (hereinafter referred to as "Tetrapoly/Maxxum"). After all, to lend credence otherwise means that Tetrapoly would effectively be insulated from having to respond in Minnesota or any other court outside of Ohio for that matter by simply paying the Ohio Secretary of State the $125 filing fee to incorporate.

Specific jurisdiction exists when the Plaintiff's claim arises from the defendant's contacts with the forum state. *Behm v. John Nuveen & Co.*, 555 N.W.2d 301, 306 (Minn. Appl. 1996). Application of the five-factor test to the established facts mandates that this Court assert specific jurisdiction over Tetrapoly.

### A. Quantity of Contacts.

It must be remembered that a "single, isolated transaction between a nonresident defendant and a resident plaintiff can be sufficient contact to justify exercising personal jurisdiction under due process standards." *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn. 1978). In fact, *a single contact* with the forum can give rise to the specific jurisdiction if the cause of action arose out of that contract. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 104 S. Ct. 1868 (1984) (emphasis supplied). Courts do not require physical presence in the forum state, and business

negotiations accomplished entirety by telephone or mail may be sufficient. *Behm v. John Nuveen & Co.*, 555 N.W.2d 301 (Minn. App. 1996).

In this case, the relationship here does not involve a single transaction like a loan agreement or a sale of goods. There are quite literally *thousands* of transactions between the parties valued at more than $4,400,000 million dollars with more than 400 separate incidents of payments to CHRW in Minnesota. Over the past three years, CHRW transported 219 shipments originating from Minnesota or having Minnesota as its destination on behalf of Tetrapoly/Maxxum. All of these orders were initiated by Tetrapoly/Maxxum, including telephone calls, emails, faxes and sending of payments for these services. These contacts reached out to Minnesota to create and sustain a business relationship with CHRW. From their foreign location, Tetrapoly/Maxxum continuously communicated with CHRW for more than five years and CHRW's claims directly relate to these contacts. There are certainly sufficient contacts to confer personal jurisdiction over Tetrapoly/Maxxum.

**B.     Nature and Quality of Contacts.**

In assessing the nature and quality of the contacts, this Court must determine whether Tetrapoly/Maxxum, purposefully availed itself of the benefits and protections of Minnesota law, *Dent-Air, Inc.*, 332 N.W.2d at 907, or "purposefully directed" its efforts at the citizens of the forum state, *Burger King Corp. v. Rudzewisc*, 471 US 462, 476, 105 S. Ct. 2174, 2184 (1985). There is a distinction between contacts by purchasers of goods and services from Minnesota residents and contacts by sellers of goods and services to Minnesota residents. In this respect, Tetrapoly/Maxxum plays a dual role. It purchased

8

services from CHRW, a Minnesota company. It also directly solicits, contracts with and presumably receives a substantial amount of business from Minnesota residents on at least 219 different occasions over the past three years.

The nature and quality of Tetrapoly/Maxxum's contacts with Minnesota in the case at bar were not random or mistaken. Tetrapoly/Maxxum was the aggressor of the relationship initiating thousands of purchase orders with CHRW and supplying CHRW with inaccurate financial statements in an effort to increase its credit limit. Tetrapoly/Maxxum entered into a contractual relationship with a Minnesota-based business. It knew that CHRW was located in Minnesota and could have easily availed itself of Minnesota law in relation to their transactions with CHRW if it needed redress. When a defendant deliberately engages in significant activities in a state or creates continuing obligations between itself and residents of the state, the defendant "purposefully avails" itself of the protections of the law, as required to support the exercise of personal jurisdiction under the Due Process Clause. *First Heartland Sur. & Cas. Ins. Co. v. Meyer*, 468 N.W.2d 563, 565 (Minn. App. 1991). The nature and quality of Tetrapoly/Maxxum's contacts with Minnesota support the exercise of personal jurisdiction.

### C. Remaining Factors.

The remaining three factors also favor the exercise of personal jurisdiction over Tetrapoly. First, the cause of action in this case obviously arose directly out of many of Tetrapoly/Maxxum's activities. Many of the unpaid invoices relate to services provided in Minnesota and as such, CHRW's damages arose from these activities. Second, CHRW is a large company employing thousands with its principal place of business located in

9

Minnesota. "A state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp.*, 471 US at 473, 105 S. Ct. at 2182 and especially fraudulent conduct. *Kopperud v. Agers*, 312 N.W. 2d, 443, 445 (Minn. 1981). It is clear that Tetrapoly/Maxxum has invested a significant amount of time and resources in expanding its business interests in Minnesota as evidenced by the thousands of transactions it entered with CHRW and with its other Minnesota customers. Obviously, it is not so inconvenienced to enter into thousands of transactions with Minnesota-based companies. It should also not be so inconvenienced to defend a lawsuit against a Minnesota based company that Tetrapoly/Maxxum breached its contractual obligations and engaged in fraudulent conduct. This last factor certainly favors exercise of specific jurisdiction over Tetrapoly.

II. **Defendants Donahue and Kowalski Have Sufficient Contacts with Minnesota for this Court to Assert Personal Jurisdiction.**

Defendants Donahue and Kowalski argue that Plaintiff's allegations against them revolve around their actions taken in their capacity as members or employees of Tetrapoly. *See* Tetrapoly's Memorandum, footnote 1. They miss the point. Tetrapoly is the successor of Maxxum and as such, is responsible for its debts and obligations. Many of the allegations involve Defendants Donahue and Kowalski's conduct as employees and officers of Maxxum prior to the formation of Tetrapoly. These include the breach of their fiduciary duties to CHRW in connection with the transfer of Maxxum's assets to Tetrapoly. Their conduct also includes fraud and misrepresentation relating to the accuracy of the financial

statements provided by Donahue and Maxxum's intent to pay the obligations it incurred with CHRW when ordering these services at a time when Maxxum was insolvent.

Defendants further imply that any of their contacts as the agents of Maxxum should not be attributable to them, in their individual capacities, for purposes of the long-arm statute. The fiduciary shield doctrine provides that "a nonresident corporate agent is not individually subject to a court's jurisdiction simply on the basis of jurisdiction of the corporation itself. *State ex rel. Miller v. Internal Energy, Etc.*, 324 N.W.2d 707, 711 (Iowa 1982). The rule has been especially criticized in cases where a corporation is a "mere shell" for the employee, *See Plummer & Co. Realtors v. Crisafi*, 533 a.2d 1242, 1246-48 (De. Super. 1987) or when the acts are tortious or, especially, fraudulent. *See Miller*, 324 N.W.2d at 714 ("Allegations of fraud are sufficient in themselves under the less stringent test to disregard (the corporate defendant's) corporate existence and attribute its minimum contacts with Iowa to (the agents) on an individual basis"."); *Graber v. Prelin Industries, Inc.*, 368 F.Supp. 1358, 1365-66 (D. S.D. 1974) (exception for fraud). The rationales for these exceptions to the fiduciary shield doctrine are the same. An agent is presumed to be acting for himself if he commits fraud or if the corporation is a mere shell.

This doctrine has never been adopted in Minnesota. *See Oakridge Holdings, Inc. v. Brukman*, 528 N.W.2d 274, 278 (Minn. App. 1995) ("Minnesota has thus far neither expressly adopted nor expressly rejected the doctrine"). The Minnesota Supreme Court has given no indication that it is inclined to do so. Additionally, the United States Supreme Court has declined to adopt the fiduciary shield doctrine. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n.13, 104 S. Ct. 1473, 1482 n.13 (1984). (We today reject the

suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.").

Here, CHRW has alleged facts against Donahue and Kowalski sufficient to support a fraudulent transfer claim, breach of fiduciary duty claim and fraud relating to the payment of CHRW's obligations when Maxxum was insolvent. Any distinction between Donahue and Kowalski, the individuals, and Donahue and Kowalski, as the corporate agents, are blurry at best. The contacts each made with CHRW and Minnesota as agents for Tetrapoly/Maxxum is attributable to them in their individual capacities for the purpose of determining jurisdiction. For the reasons set forth above relating to Tetrapoly, there exist contacts sufficient for this Court to assert jurisdiction over each of these individual defendants.

## III. Alternatively, this Court Should Permit CHRW to Conduct Jurisdictional Discovery.

It bears mentioning that any doubt regarding the sufficiency of contacts to support the exercise of personal jurisdiction should be resolved in favor of finding jurisdiction. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d at 412. In the unlikely event that there is any doubt regarding the exercise of jurisdiction and this Court relies on Donahue's affidavit, this Court should, at a minimum, permit discovery limited to the issue of jurisdiction.

The Court may look beyond the complaint and consider other facts in evidence. *See Hardrives*, 307 Minn. at 293, 240 N.W.2d at 816 (noting that a plaintiff need only make a prima facie case through the complaint and other supporting evidence). The decision to

grant jurisdictional discovery is within the district court's broad discretion. *Behm v. John Nuveen & Co.*, 555 N.W.2d 301, 305 (Minn. App. 1996). Jurisdictional discovery generally is permitted before a court rules on a motion to dismiss for lack of personal jurisdiction. *Id.*

If this Court relies on Donahue's affidavit, CHRW should be permitted to conduct jurisdictional discovery so the factual weaknesses in the affidavit can be exposed on cross examination and through other discovery. For instance, Donahue testified that he was never an officer of Maxxum. *See Donahue Affidavit, Paragraph 5.* In direct contradiction to his sworn testimony, Donahue has sent several e-mails to CHRW with the title of Vice President of Finance. *Fafinski Affidavit, Paragraph 7, Exhibit E.* In addition, it is worth noting that in Donahue's affidavit, he admitted that he and Andrew Kowalski (who inexplicably failed to submit his own affidavit) were members of Tetrapoly; however, Donahue did not state that they were the only members of Tetrapoly --- which necessarily begs the question as to who else maintains an ownership interest in Tetrapoly and what contacts do these individuals have with the State of Minnesota.

Personal jurisdiction may be general or specific. Specific jurisdiction arises from limited contacts with the forum state that are related to the plaintiff's claim. CHRW has provided evidentiary support that the parties have entered into nearly 5,000 transactions with CHRW valued at more than $4,400,000 million dollars with more than 400 separate payments sent to Minnesota over the past five years. CHRW has also provided evidentiary support that Tetrapoly/Maxxum, conducted more than 200 transactions in Minnesota with an unrelated third party located in Minnesota and a portion of the outstanding invoices at issue in this case relate to these transactions. These are the transactions that CHRW are

aware of simply because it arranged for the transportation of the product. These contacts are certainly sufficient to assert specific jurisdiction over Defendants.

General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, such that defendant could reasonably expect to be subject to jurisdiction in the forum for proceedings unrelated to its contacts. *Valspar*, 495 N.W.2d at 411. There are presumably other logistic companies that Tetrapoly utilized that provided services in Minnesota on its behalf. Indeed, Tetrapoly --- who has been in existence for only 7 months --- concedes that it already has entered into at least one acknowledged transaction with an unrelated Minnesota company. *See* Tetrapoly's Affidavit, note 3. If, for some reason, this Court hesitates to exercise specific jurisdiction, it should permit CHRW an opportunity to conduct jurisdictional discovery designed to secure business records, contracts, correspondence, e-mails, invoices, etc. of those unrelated third parties located in Minnesota in support of the claim that general jurisdiction exists and that Tetrapoly has had a "continuous and systematic" contacts with the State of Minnesota.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. Alternatively, this Court should permit Plaintiff to conduct discovery limited to jurisdiction.

Respectfully submitted,

Dated: May 21, 2010

s/Timothy W. Fafinski
Timothy W. Fafinski (#201947)
3411 Brei Kessel Road
Independence, MN 55359
Phone: (952) 944-9500

*Attorney for Plaintiff*