```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
                Civil No. 10-1143(DSD/FLN)
```

C.H. Robinson Worldwide, Inc.,

      Plaintiff,

v.                                        **ORDER**

Maxxum Group, LLC, Tetrapoly,
LLC, Alex and Debra Kowalski,
Peter Kowalski, Brian Donahue,
Tim Carter and Andrew Kowalski,

      Defendants.

    Timothy W. Fafinski, Esq., Corporate Counsel, 3411 Brei
    Kessel Road, Independence, MN 55359, counsel for
    plaintiff.

    David P. Kostolnik, Esq. and Moss & Barnett, 90 South
    Seventh Street, Suite 4800, Minneapolis, MN 55402 and
    David D. Yeagley, Esq., Paul R. Harris, Esq. and Ulmer &
    Berne, 1660 West Second Street, Suite 1100, Cleveland, OH
    44113, counsel for defendants.

This matter is before the court upon the motion of defendants Tetrapoly, LLC ("Tetrapoly"),[1] Brian Donahue ("Donahue") and Andrew Kowalski to dismiss. Based on a review of the file, record and the submissions herein, the court grants the motion in part.

---

[1] Tetrapoly is a limited-liability company located at 4740 Manufacturing Avenue in Cleveland, Ohio. Its members, defendants Brian Donahue and Andrew Kowalski and nonparty Matthew Kowalski, are citizens of Ohio. (See Defs.' Br. [Doc. No. 25] 1; but see Donahue Aff. [Doc. No. 18] ¶¶ 6-7 (stating that Tetrapoly has five owners).)

**BACKGROUND**

This contract dispute arises out of transportation services that plaintiff C.H. Robinson Worldwide, Inc. ("C.H. Robinson")[2] provided to defendant Maxxum Group, LLC ("Maxxum").[3] Maxxum is a plastics commodities company that purchased $4,400,000 in road transportation services from C.H. Robinson over the last five years. (See Pl.'s Mem. Opp'n 3; Glad Aff. ¶ 3.) In February 2009, C.H. Robinson extended an additional $500,000 in credit to Maxxum based on financial statements provided by Donahue. (Pl.'s Mem. Opp'n 3; Donahue Aff.[4] ¶ 14.) Thereafter, C.H. Robinson continued to provide shipping services for Maxxum, including deliveries to nonparty "Ketter [sic] Resin Group in Indiana." (Macy Aff. ¶ 8.)

On September 2, 2009, defendant Alex Kowalski met with alleged Maxxum vice president[5] Donahue, and Maxxum employees Andrew and Matthew Kowalski, Shawn Stine and Tim Carter, and informed them that their employment would be terminated. (Pl.'s Mem. Opp'n 3-4;

---

[2] C.H. Robinson is a Minnesota corporation, with its principal place of business in Eden Prairie, Minnesota.

[3] According to the Ohio Secretary of State's website, Maxxum is an Ohio corporation, with its principal place of business in Lakewood, Ohio. Its owners are Peter, Alex and Debra Kowalski and David Griffiths. (Compl. ¶¶ 4-5; Defs.' Mem. Supp. 5.)

[4] All citations of Donahue's affidavit are of Donahue's May 28, 2010, affidavit [Doc. No. 18].

[5] Donahue claims never to have been a vice president of Maxxum. (See Donahue Aff. ¶ 13; but see Fafinski Aff. Ex. E (Donahue email with signature block stating "Brian Donahue, Vice President of Finance, Maxxum Group ...").)

Donahue Aff. ¶¶ 5-6.)  According to C.H. Robinson, Alex Kowalski presented the employees with an opportunity to start a new plastics commodities company and offered to lease Maxxum's 4740 Manufacturing Avenue property to them.[6]  On September 3, 2009, Donahue and Matthew and Andrew Kowalski organized Tetrapoly.  (See Defs.' Br. 2.)  Also on September 3, 2009, Matthew and Andrew Kowalski and Tim Carter signed a contract with nonparty Resin Partners, Inc. d/b/a Home Design Products,[7] after which Maxxum did not conduct business with Resin Partners, Inc.  (Donahue Aff. ¶ 8.)  Thereafter, according to C.H. Robinson, Tetrapoly purchased Maxxum's assets at below-market prices and resold those products to Ketter [sic] Resin Group.  (Compl. ¶ 19; cf. Macy Aff. ¶ 10.)  On September 4, 2009, Maxxum ceased operations.  (Compl. ¶ 17.)  As of September 4, 2009, Maxxum owed C.H. Robinson over $440,000 for its services.  Maxxum has not paid C.H. Robinson.

C.H. Robinson filed this action in Minnesota state court on April 6, 2010, claiming breach of fiduciary duty, misrepresentation and fraud, fraudulent transfer, breach of contract and account stated against Maxxum, Tetrapoly and their various owners.

---

[6] Tetrapoly denies that the meeting occurred.  (Defs.' Reply 6; Donahue Aff. ¶ 4.)

[7] According to the Indiana Secretary of State's website, Resin Partners, Inc. also does business under the names Keter North America and Keter Plumbing Products.

Tetrapoly, Donahue and Andrew Kowalski timely removed,[8] and filed the instant motion to dismiss for lack of personal jurisdiction. Following defendants' clarification of the citizenship of Tetrapoly's members, the court is satisfied that it has subject matter jurisdiction under 28 U.S.C. § 1332. (See Doc. Nos. 24–28.) The court now considers Tetrapoly, Donahue and Andrew Kowalski's motion to dismiss.

## DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation and quotation marks omitted). Because the Minnesota

---

[8] Only Tetrapoly, Donahue and Andrew Kowalski have been served process. (Doc. No. 25.)

4

long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. See Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Coen, 509 F.3d at 905 (citation and quotation marks omitted). A defendant should reasonably anticipate being haled into court in a forum state within which it "purposefully avail[ed] itself of the privilege of conducting activities, ... thus invoking the benefits and protections of its laws." Id. (citation omitted) A court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004) (citation and quotation marks omitted). The court gives significant weight to the first three factors. Id.

Contacts with the forum state can establish personal jurisdiction under either general or specific jurisdiction. General jurisdiction is present when a defendant has "continuous and systematic contacts with the forum state," regardless of the cause of action. Coen, 509 F.3d at 905 (citation and quotation marks omitted). A forum state has specific jurisdiction when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

**I.  Direct Contacts**

Tetrapoly argues that the court lacks personal jurisdiction over it because it has no contacts with the state of Minnesota. (See Donahue Aff. ¶¶ 7-15.) C.H. Robinson responds that Tetrapoly has conducted business in Minnesota by brokering the sale of plastics by a Minnesota seller to a Canadian buyer. Applying the five-factor test for minimum contacts, this single act unrelated to the instant action does not support either specific or general jurisdiction. See Dever, 380 F.3d at 1073-74. Therefore, accepting all facts alleged by C.H. Robinson as true and drawing reasonable inferences in favor of C.H. Robinson, the court determines that C.H. Robinson has not made a prima facie case of jurisdiction based on Tetrapoly's contacts with Minnesota.

6

**II. Imputed Contacts**

Tetrapoly, Donahue and Andrew Kowalski also argue that Maxxum's contacts with Minnesota[9] may not be imputed to them. Federal courts exercise personal jurisdiction over entities that would not ordinarily be subject to personal jurisdiction when the entity "is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases); see Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 637-38 (8th Cir. 1975). Minnesota imposes successor liability only when the successor expressly or impliedly agrees to assume liability or when provided for by statute.[10]  See Minn. Stat. § 302A.661 subdiv. 4.  The Minnesota Uniform Fraudulent Transfer Act imposes liability when a debtor transfers assets "with actual intent to hinder, delay, or defraud any creditor of the debtor ...." Id. § 513.44(a)(1).  The statute instructs courts to consider a number of factors when assessing actual intent, including whether:

---

[9] For purposes of this motion, the court assumes that Maxxum is subject to personal jurisdiction in Minnesota.

[10] Contrary to the parties' assertions, continuation is not a basis for successor liability in Minnesota.  Minn. Stat. § 302A.661 subdiv. 4; see also Minn. Stat. Ann. § 302A.661, at 2006 Reporter's Notes (West 2010) ("[T]here are no common law exceptions to the rule of transferee non-liability.").

 (1) the transfer or obligation was to an insider;

 (2) the debtor retained possession or control of the property transferred after the transfer;

 (3) the transfer or obligation was disclosed or concealed;

 (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

 (5) the transfer was of substantially all the debtor's assets;

 (6) the debtor absconded;

 (7) the debtor removed or concealed assets;

 (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

 (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

 (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

 (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Id. § 513.44(b).  Minnesota defines insiders to include directors and officers and their relatives and spouses.  Id. § 513.41(7)(ii)(F), (11).

 Tetrapoly, Donahue and Andrew Kowalski argue that the court cannot impute Maxxum's contacts because Tetrapoly did not agree to assume Maxxum's liabilities and "there was no transfer of assets from Maxxum to Tetrapoly."  (Donahue Aff. ¶ 15.)  C.H. Robinson

8

responds that Maxxum transferred assets to Tetrapoly while Maxxum was insolvent to escape its obligations to its creditors. (See Compl. ¶ 14.) C.H. Robinson further alleges that Alex Kowalski offered to rent space at Maxxum's 4740 Manufacturing Avenue location and transfer the Ketter [sic] Resin Group contract to Tetrapoly. (See Macy Aff. ¶ 9-10.) Lastly, C.H. Robinson also submits an affidavit that states "Donahue told [a C.H. Robinson general manager] that Tetrapoly purchased product from Maxxum and then re-sold it to Ketter [sic] Resin Group." (Id. ¶ 10.)

Donahue's self-serving and contradictory affidavits are entitled to little weight, and viewing the facts in the light most favorable to C.H. Robinson, the court determines that the factual allegations support the reasonable inference that Maxxum transferred assets to insiders while insolvent. C.H. Robinson has not shown, however, that Maxxum sold assets to Tetrapoly for less than market value, or any other indicia of fraudulent transfer. (Id.) The present record is insufficient to determine as a matter of law that Maxxum fraudulently transferred assets.[11] Therefore, C.H. Robinson has not made a prima facie showing of jurisdiction, and dismissal or transfer is warranted.

---

[11] The court expresses no opinion about Tetrapoly, Donahue or Andrew Kowalski's ultimate liability to C.H. Robinson.

9

**III. Limited Discovery**

C.H. Robinson argues that the court should order discovery related to jurisdiction. A district court need not order jurisdictional discovery when the plaintiff's prima facie showing relies on speculations and conclusory allegations. See Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008) (citing Dever, 380 F.3d at 1074 n.1). As to general jurisdiction, C.H. Robinson only speculates about Tetrapoly's possible "continuous and systematic" contacts with Minnesota based on a single contact. Therefore, the court declines to order discovery to determine whether the court has general jurisdiction over Tetrapoly.

The court also declines to order discovery into specific jurisdiction. C.H. Robinson's only admissible evidence that imputed specific jurisdiction exists is an affidavit that states that Tetrapoly purchased product from Maxxum. This statement is not sufficient to require additional discovery. Moreover, ordering jurisdictional discovery in Minnesota violates the mandate of Rule 1 "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1. Following limited discovery, the record may still be insufficient to determine as a matter of law whether jurisdiction exists in Minnesota. Even if the limited discovery showed that this court lacks jurisdiction, at that point, the court would dismiss or transfer the case. Expending time and resources only to arrive at the current procedural posture is

inefficient and delays resolution when a forum exists where the parties may conduct discovery directed to the merits of the case. Therefore, the court declines to order additional discovery.

**IV. Transfer**

Lastly, where, as here, a court lacks personal jurisdiction, it must dismiss the matter or, in the interest of justice, transfer it "to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631; Superior Edge, Inc. v. Maricopa County Cmty. Coll. Dist., 509 F. Supp. 2d 786, 795 (D. Minn. 2007). The factual allegations suggest that C.H. Robinson may prevail on its claims against Tetrapoly and its members. Therefore, the court finds it in the interest of justice to transfer this case to the United States District Court for the Northern District of Ohio, where the case may properly proceed to resolution.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion [Doc. No. 2] is granted in part, and the case is transferred to the United States District Court for the Northern District of Ohio.

Dated: July 21, 2010

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court